STATE of Missouri, Respondent,

v.

Christopher BURTON, Appellant.

No. ED 97224.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 17, 2012.

Margaret M. Johnston, Columbia, MO, for appellant.

H. Morley Swingle, Frank E. Miller, Jackson, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

The defendant, Christopher Burton, appeals the judgment entered by the Circuit Court of Cape Girardeau County following a trial in which the court convicted him of the class-A misdemeanor of third-degree assault of a law-enforcement officer, in violation of section 565.083 RSMo. (Supp. 2011).[1] The defendant fled a lawful stop and led a trooper on a foot chase. During the foot chase, the trooper sustained an injury. By fleeing a lawful stop by a law-enforcement officer, the defendant demonstrated a conscious disregard of a substantial and unjustifiable risk of physical injury to the trooper. Such disregard grossly deviated from the standard of care that a reasonable person would exercise, and thus was reckless. Further, the defendant's voluntary act of unlawful flight initiated a course of conduct that caused physical injury to the trooper. Therefore, we hold that the State presented sufficient evidence to show that the defendant recklessly caused physical injury to a law-enforcement officer and affirm the judgment of conviction.

Our review of the record reveals the following facts.[2] Missouri State Highway Patrol Trooper Adam Miller saw the defendant riding a motorcycle without a helmet on U.S. Highway 61. The trooper turned his patrol car around, activated his lights, and pursued the defendant as the motorcycle accelerated. As the trooper caught up to the defendant, the defendant pulled into a driveway, and then left the driveway and continued to ride the motorcycle down a hill through the grass. There had been significant rain recently. The defendant hit a patch of mud, lost control of his motorcycle, and was thrown from it. The defendant got up, looked directly at the trooper, and began running as the trooper pursued him on foot. When the trooper came within an arm's length of the defendant, they encountered what the trooper described as a "patchy, muddy area." As the trooper "leaped out to grab" for the defendant, the defendant lost his footing, and slid forward, striking his head and neck on a fence. The trooper "was still kind of in the air at the time, and [he] landed face first into the bottom rung of the fence." The trooper suffered a broken nose and a cut to his upper lip. The defendant rose, and ran again. The trooper pursued him further, across two barbed wire fences and into a thicket in which the defendant became entangled, enabling the trooper to finally apprehend and arrest him.

The State charged the defendant with the class-D felony of driving while revoked, in violation of section 302.321; the class-A misdemeanor of resisting a stop, in violation of section 575.150; and the class-A misdemeanor of third-degree assault of a law-enforcement officer, in violation of section 565.083. The amended information charged the defendant with third-degree assault on a law-enforcement officer in that the defendant recklessly caused physical injury to the trooper "by fleeing, falling forward, and causing [Trooper] Miller to strike his face on a fence." The defendant pleaded guilty to the charges of driving

---

1. All statutory references are to RSMo. (Supp. 2011) except as otherwise indicated.

2. The State's brief does not accurately recite the evidence in the record. The State asserts that the trooper grabbed the defendant's shirt, that both men fell to the ground, and that the two men then slid on the wet ground towards a fence, where the trooper struck his face. Trooper Miller, the only witness to testify, did not testify to the facts as the State portrays them.

while revoked and resisting a stop, but proceeded to a bench trial on the charge of assaulting a law-enforcement officer. The court found the defendant guilty, and sentenced him to one year of confinement in the county jail on the assault charge. The defendant appeals.

In one point on appeal, the defendant claims the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence. The defendant contends that the State failed to present sufficient evidence from which a trier of fact could conclude beyond a reasonable doubt that he acted recklessly by running in muddy conditions. We shall also address an unbriefed issue. We may, in our discretion, consider plain errors, whether briefed or not, that affect substantial rights when we find that manifest injustice or miscarriage of justice has resulted. Rule 30.20. Therefore, we shall also examine whether a voluntary act of the defendant caused the trooper to sustain physical injury.

■■■ We shall affirm a trial court's denial of a motion for judgment of acquittal if, at the close of all the evidence, sufficient evidence exists from which reasonable persons could have found the defendant guilty of the charged offense. *State v. Jones,* 296 S.W.3d 506, 509 (Mo. App. E.D.2009). We limit our review of a challenge to the sufficiency of the evidence in a court-tried criminal case to a determination of whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty. *State v. Vandevere,* 175 S.W.3d 107, 108 (Mo. banc 2005). We examine the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and inferences. *Id.*

The first question, partially briefed by the defendant, is whether the defendant's conduct in fleeing the trooper was reck-less. As charged here, a person commits the crime of third-degree assault of a law-enforcement officer where he recklessly causes physical injury to a law-enforcement officer. Section 565.083.1(1). The culpable mental state for third-degree assault of a law-enforcement officer in this case is "recklessness." "A person 'acts recklessly' or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.4 RSMo. (2000).

■■■ We hold that the State adduced sufficient evidence that the defendant acted recklessly. The defendant's actions demonstrate that he knew that the trooper was a law-enforcement officer in pursuit. Nevertheless, the defendant accelerated when the trooper turned his patrol car around and activated his lights on the highway; the defendant left the roadway and rode his motorcycle into the wet grass where he was thrown from it; when he stood up, he looked directly at the trooper and ran; he then led the trooper on a foot chase through wet, muddy conditions, over three fences, and into a thicket. A reasonable person would not have fled a lawful stop by law enforcement, but rather would have submitted to the authority of the trooper.

By fleeing, the defendant committed the crime of resisting a stop in violation of section 575.150.1. As charged here, a person is guilty of resisting a stop if he knows, or reasonably should know, that a law-enforcement officer is attempting to lawfully stop a person or vehicle, and for the purpose of preventing the officer from effecting the stop, he resists by fleeing from the officer. Section 575.150.1. The defendant pleaded guilty to this offense.

■ We conclude that the defendant demonstrated a conscious disregard for a substantial and unjustifiable risk that the trooper would sustain injury during the pursuit. The defendant could reasonably foresee that the trooper would pursue him through the muddy field. Flight from an officer effecting a legal stop inherently includes a substantial and unjustifiable risk of physical injury to the officer. This risk is most clearly demonstrated in cases of high-speed vehicle chases, where law-enforcement officers or innocent third parties may suffer injury or death. In fact, section 575.150.5 recognizes just such a risk when it specifies that flight in a manner creating a substantial risk of *serious* physical injury or death is a class-D felony, while otherwise, as here, flight constitutes a class-A misdemeanor. In any event, a substantial and unjustifiable risk of physical injury is inherent in any flight from a lawful stop by law enforcement. A reasonable person would not disregard this risk. Thus, the defendant's disregard constituted a gross deviation from the standard of care that a reasonable person would exercise.

We find persuasive the reasoning of *People v. Cervantes,* 408 Ill.App.3d 906, 349 Ill.Dec. 41, 945 N.E.2d 1193 (2011). Remarkably, the facts of *Cervantes* nearly mirror the circumstances of this case. In *Cervantes,* the defendant was convicted of resisting a peace officer by fleeing, and the offense constituted a felony because the defendant's conduct proximately caused injuries to the officer. 349 Ill.Dec. 41, 945 N.E.2d at 1194. Upholding the conviction, the Illinois appellate court concluded that when Cervantes chose to run through ice and snow from the pursuing officers, it was reasonably foreseeable that the officers would continue the chase on foot, and in doing so, might suffer injury by falling on the snow or ice. *Id.* at 1196. One officer also testified that he sustained addi-

tional injuries by climbing a fence. *Id.* The Court determined that Cervantes should have reasonably foreseen that a pursuing officer might be injured by a fall during the chase. *Id.*

■ The second question we shall consider is whether a voluntary act of the defendant caused the trooper to sustain physical injury. The defendant does not address this issue. This Court, however, may in our discretion consider plain errors, whether briefed or not, that affect substantial rights when we find that manifest injustice or miscarriage of justice has resulted. Rule 30.20. We conclude, however, that the State presented sufficient evidence from which a trier of fact could have reasonably found that the defendant's voluntary act caused the trooper's physical injury. Thus, we find no plain error.

■■ First, a person is not guilty of an offense unless his liability is based on conduct that includes a voluntary act. Section 562.011.1 RSMo. (2000). A "voluntary act" includes "[a] bodily movement performed while conscious as a result of effort or determination." Section 562.011.2(1) RSMo. (2000). This definition recognizes the accepted principle that an "act" constitutes an essential component of criminal liability. Mo. Ann. Stat. § 562.011 (West 1999) cmt. to 1973 Proposed Code. But liability need not be based upon an act itself, but rather upon a course of conduct that includes a voluntary act. *Id.* Thus, for example if a driver loses consciousness and his car strikes and kills a pedestrian, the driver certainly is not acting while unconscious. *Id.* The driver's failure to stop when he began to feel ill could, however, in the appropriate circumstances, be regarded as sufficiently negligent to impose criminal liability. *Id.* Liability would be based on the driver's entire course of conduct, of which his failing to stop would

be a part. *Id.* (citing Comments, Model Penal Code, Tent. Draft No. 4, 119–20 (1955)).

The defendant's flight from the trooper constituted such a voluntary act. As described above, the defendant knew that the trooper was a law-enforcement officer and was pursuing him. The defendant voluntarily fled. By voluntarily fleeing from a law-enforcement officer seeking to apprehend him, the defendant set in motion a course of events that led to the trooper sustaining physical injury.

■ Second, for criminal liability, the defendant's conduct must be both the actual cause and the legal, or proximate, cause of the result. 1 WAYNE R. LaFAVE, SUBSTANTIVE CRIMINAL LAW § 6.4(a), at 466 (2d ed.2003). Conduct ordinarily constitutes the actual cause of a particular result where "but for" the conduct, the result would not have occurred. 1 *id.* § 6.4(b), at 467. "Proximate cause," in simplified terms, is cause legally sufficient to result in liability. *See* 1 *id.* § 6.4(a), at 466.[3]

■ A defendant is criminally responsible for assault by whatever means it was accomplished, provided his unlawful act proximately caused the resulting injury. *State v. Toran*, 878 S.W.2d 913, 914 (Mo. App. E.D.1994); *see also State v. Vaughn*, 707 S.W.2d 422, 426 (Mo.App. W.D.1986) (one is criminally responsible for homicide by whatever means accomplished, provided it was proximately caused by his unlawful act). Thus, with crimes—such as third-degree assault of a law-enforcement officer—defined to require not merely conduct, but also a specified result of such

conduct, the defendant's conduct must be the legal, or proximate, cause of the result. 1 LaFAVE § 6.4, at 464. The defendant's conduct must constitute the cause in fact of the result—but for the defendant's conduct, the result would not have occurred. 1 *id.* And any variation between the result hazarded by the defendant's reckless conduct and the result actually achieved must not be so extraordinary that it would be unfair to hold the defendant responsible for the actual result. 1 *id.*

Again, the defendant's flight constituted a criminal act in fleeing a lawful stop, in violation of section 575.150.1. This criminal act led the trooper to pursue the defendant, during which pursuit the trooper sustained physical injury. As to actual causation, the trooper would not have been running in a muddy field and crossing over fences but for the defendant's flight through the field. As to legal, or proximate causation, the defendant should have reasonably foreseen that the trooper might fall and suffer injury while pursuing him. We find no variation from the result hazarded by the defendant's reckless conduct and the actual result. His flight from the trooper across a wet, muddy field and across three fences created a risk of injury to the trooper that materialized. Again, we find the reasoning of *People v. Cervantes* persuasive, wherein Cervantes's conduct of leading police officers on a chase through ice- and snow-covered yards and driveways proximately caused injury to one of the officers. 349 Ill.Dec. 41, 945 N.E.2d at 1196. Likewise here, the defendant's flight proximately caused the trooper's pursuit and injury.

---

**3.** We note that actual causation, or causation in fact, is the same analytically in criminal law and tort law. 1 LaFave § 6.4(c), at 471 n. 32. However, legal, or proximate, causation is not the same analytically in criminal law and tort law. 1 *id.* § 6.4(c), at 471–72. In tort law, the defendant may he held responsible for harms different than those risked by his conduct. 1 *id.* In criminal law, however, this is generally not the case, where a closer relationship between the result intended or hazarded and the result achieved may be required. 1 *id.* § 6.4(c), at 472.

To summarize, by fleeing a lawful stop by a law-enforcement officer, the defendant demonstrated a conscious disregard of a substantial and unjustifiable risk of physical injury to the trooper. Such disregard grossly deviated from the standard of care that a reasonable person would exercise, and thus was reckless. Further, the defendant is criminally responsible for the trooper's injury because the defendant's voluntary act of unlawful flight commenced a course of conduct that caused the trooper's injury. Consequently, we hold that the State presented sufficient evidence to show that the defendant recklessly caused physical injury to a law-enforcement officer. We affirm the trial court's judgment.

KATHIANNE KNAUP CRANE, P.J., and KENNETH M. ROMINES, J., concur.