2020 IL App (1st) 182302-U

No. 1-18-2302

Order filed November 10, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 9512 |
| | ) | |
| COREY IVY, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for resisting or obstructing a peace officer where the State proved beyond a reasonable doubt that he proximately caused injury to the officer.

¶ 2    Following a bench trial, defendant Corey Ivy was found guilty of one count of resisting or obstructing a peace officer while proximately causing an injury to the officer (720 ILCS 5/31-1(a), (a-7) (West 2018)) and sentenced to two years' imprisonment. On appeal, defendant argues that

the evidence was insufficient to prove he proximately caused any injury to the officer. For the following reasons, we affirm.

¶ 3 Defendant was indicted on one count of armed habitual criminal, four counts of unlawful use or possession of a weapon by a felon, two counts of aggravated unlawful use of a weapon, and one count of resisting or obstructing a peace officer and proximately causing an injury to the officer, specifically a torn rotator cuff.

¶ 4 On September 20, 2018, the trial court held a pretrial hearing on defendant's motion to suppress. Defendant called Illinois state trooper Robert Tate, who testified that on June 9, 2018, at approximately 11:33 p.m., he saw a bronze Kia driving northbound on the Dan Ryan Expressway near 63rd Street. He identified defendant as a passenger of the Kia. Tate curbed and searched the Kia and recovered an open bottle of alcohol, a closed bottle of alcohol, and a fully loaded semiautomatic Springfield XD .40-caliber handgun. Defendant was arrested for possessing that handgun.

¶ 5 On cross-examination, Tate testified that the Kia was driving above the speed limit at 101 miles per hour in the express lane. After curbing the Kia, he spoke with the driver in his police vehicle, and she provided names for her passengers. Tate ran those names in the system and determined they were incorrect. Trooper King then arrived on the scene.[1] Tate returned to the Kia and removed two passengers from the back seat. He asked defendant, who was in the front passenger seat, to exit the Kia after King informed him of open alcohol in the Kia. Defendant complied and Tate searched the Kia, finding open alcohol in the front passenger compartment on the floorboard, and a firearm under the front passenger seat. Tate identified a dash camera video

---

[1] King's first name does not appear in the record.

from his vehicle, which the State published. The video, which is included in the record on appeal, shows him curbing the Kia.

¶ 6 On redirect, Tate agreed that timestamps on the video showed that over 15 minutes passed from the time he stopped the Kia to when he asked defendant to exit. Tate saw a black bag by defendant's foot but no open alcohol when he first approached the Kia. Tate conducted a protective pat down of defendant, but did not discover any weapons. Tate identified a second video continuing the traffic stop, which the State published and showed the search of the Kia beginning over 20 minutes after the initial stop.[2] The proceedings were then continued to September 26, 2018.

¶ 7 On September 26, 2018, the trial court began defendant's bench trial without ruling on the motion to suppress. By agreement of the parties, testimony from the prior hearing was incorporated in the trial.

¶ 8 The State called Tate, who testified consistently with his statements at the suppression hearing regarding how he curbed the Kia and discovered an open container of alcohol and the firearm. Tate attempted to handcuff defendant and placed one hand on defendant's right wrist, and defendant attempted to run. Tate "maintained [his] grip on [defendant]," who "pulled away multiple times towards the active lane of traffic." Defendant broke Tate's grip and ran around the Kia, and Tate warned defendant he would deploy his taser. Defendant jumped over the concrete median that separated the active local lanes of the highway and ran east across three lanes. Tate

---

[2] At trial, Tate stated both videos were included on a single DVD. The DVD included in the record on appeal, however, only contains the first video played at the pretrial hearing.

jumped over the median and ran after defendant. He warned defendant again that he would deploy his taser and struck defendant on the second attempt.

¶ 9 Defendant fell down an embankment east of the highway. Tate got on top of him and warned defendant he would be tased again if he got up. Defendant cooperated, and Tate used his left arm to handcuff defendant. Tate used his right arm to stand defendant up, and his left arm went numb. Tate felt pain in his left shoulder, left knee, and left foot. The numbing eventually stopped, but a shooting pain from his shoulder to his elbow lasted for two months and the pain in his knee was ongoing.

¶ 10 At the station, Tate advised defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant spoke about his itinerary for the day and stated that the firearm belonged to one of the other passengers.

¶ 11 On cross-examination, Tate testified the other two passengers also fled from the Kia. Defendant was not the registered owner of the Kia. Tate first noticed pain after he handcuffed defendant. Tate's field report did not mention that his arm went numb. On redirect, Tate testified the report indicated an injury to his arm.

¶ 12 The State then published 17 seconds of the second video, and entered into evidence a certified abstract from the Illinois State Police regarding defendant's "FOID card and CCL card."[3] The State also entered a stipulation that defendant had two qualifying felony convictions in case numbers 16 CR 10203 and 08 CR 13983. Defense counsel entered into evidence a certified copy of the registration for the Kia.

---

[3] The abstract is not included in the record on appeal, and the transcript of proceedings does not contain a description of the content of the abstract or the portion of the second video that was published.

¶ 13    The court found defendant guilty of resisting a peace officer and proximately causing his injuries, but not guilty on all other counts. According to the court, Tate's testimony was "credible and compelling," and established that defendant resisted and obstructed Tate from his duties. Further, Tate "suffer[ed] injuries that he described when he talked about the feelings in his own body."

¶ 14    Defendant filed a motion to reconsider judgment or in the alternative for new trial, arguing in part that the State failed to prove that he proximately caused the injuries to Tate.[4] The trial court denied the motion. Following a hearing, the court sentenced defendant to two years' imprisonment, noting Tate was injured "trying to do his job." Defendant filed a motion to reconsider sentence, which was denied.

¶ 15    On appeal, defendant concedes he resisted a peace officer but argues that the conviction should be reduced from a Class 4 felony to a Class A misdemeanor because the State failed to prove beyond a reasonable doubt that he caused Tate's injuries.

¶ 16    When a defendant challenges the sufficiency of the evidence presented against him, we must ask whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found each element of the crime proven beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). The appellate court will "allow all reasonable inferences from the record in favor of the prosecution." *People v. Davison*, 233 Ill. 2d 30, 43 (2009). The trier of fact is responsible for determining the witnesses' credibility, weighing their testimony, resolving conflicts in the evidence, and drawing

_____

[4] Defendant's motion also alleged the trial court erred in denying his motion to suppress, although the trial court's ruling thereon does not appear in the record.

all reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). We will not substitute our judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses. *Brown*, 2013 IL 114196, ¶ 48. A reviewing court " 'will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.' " *People v. Lloyd*, 2013 IL 113510, ¶ 42 (quoting *People v. Collins*, 214 Ill. 2d 206, 217 (2005)).

¶ 17    A defendant commits the offense of resisting or obstructing a peace officer when he "knowingly resists or obstructs the performance by one known to the person to be a peace officer" of "any authorized act within his or her official capacity." 720 ILCS 5/31-1(a) (West 2018). Relevant here, the offense is a Class 4 felony, and not a Class A misdemeanor, where the "violation was the proximate cause of an injury to a peace officer." *Id.* § 31-1(a-7). Defendant does not challenge that Tate was a peace officer acting in his official capacity, but only whether his conduct proximately caused Tate's injuries.

¶ 18    " '[P]roximate cause' describes two distinct requirements: cause in fact and legal cause." *People v. Hudson*, 222 Ill. 2d 392, 401 (2006). Cause in fact exists when a defendant's actions are "a material element and a substantial factor in bringing about the injury." *People v. Mumaugh*, 2018 IL App (3d) 140961, ¶ 28. A defendant's actions are a material element and a substantial factor in bringing about an injury if, absent those actions, the injury would not have occurred. *Id.*

¶ 19    Legal cause is the " 'question of foreseeability,' " that is, " 'whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct.' " *Hudson*, 222 Ill. 2d at 401 (quoting *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 258 (1999)). Foreseeability is required because it would be unfair to hold a defendant accountable for a result

extraordinarily different from the intended outcome of his actions. *Id.* A defendant's actions may be the legal cause for an officer's injury even where they are not the only cause. *People v. Cervantes*, 408 Ill. App. 3d 906, 910 (2011).

¶ 20    After viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, we find a rational trier of fact could have determined that defendant proximately caused Tate's injuries.

¶ 21    Tate testified that, when he tried to handcuff defendant, defendant broke Tate's grasp and fled. While chasing defendant, Tate jumped over a concrete median lane divider, ran across three lanes of the highway, and tased defendant. Then, Tate got on top of defendant, handcuffed him, and lifted him off the ground. After these actions, Tate's left arm went numb and he felt pain in his left shoulder, left knee, and left foot. Consequently, even if the evidence did not establish that Tate's injury to his left arm happened precisely when defendant broke out of Tate's grasp or when Tate later lifted him with his right arm, a rational trier of fact could conclude that the injury occurred during the course of defendant's flight and subsequent capture. In light of this evidence, the trier of fact could reasonably determine defendant resisting arrest was the cause in fact of Tate's injuries because absent those actions, the injury would not have occurred.

¶ 22    Furthermore, when defendant chose to break Tate's grasp, flee, and climb over a highway median, it was reasonably foreseeable that Tate would give chase and might be injured in attempting to capture defendant. See *Cervantes*, 408 Ill. App. 3d at 909-10 (holding it was reasonably foreseeable that an officer might be injured by a fall after climbing a fence or chasing a defendant on ice). There is no circumstance that breaks the causal connection between defendant's resistance and Tate's injury, nor were Tate's injuries unforeseeable. See *id.* Therefore,

the trial court could reasonably determine that legal cause existed, and find defendant's resistance was the proximate cause of injury to Tate. We cannot say the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.

¶ 23    For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 24    Affirmed.